# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL COMPLAINT |
| v. | : | Mag. No. 07-8046 |
| AKBAR WRIND,<br>    a/k/a "Subash Chopra," and<br>RAFAEL MARTE | : | HON. MADELINE COX ARLEO |

I, Darren McCormack, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Between at least as early as 1999, and on or about July 1, 2005, in Hudson County, in the District of New Jersey and elsewhere, defendants **AKBAR WRIND**, a/k/a "Subash Chopra", and **RAFAEL MARTE**, did:

## SEE ATTACHMENT A

in violation of Title 18, United States Code, Section 1029(b)(2).

I further state that I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, and that this complaint is based on the following facts:

## SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

Special Agent Darren McCormack
Department of Homeland Security
Immigration and Customs Enforcement

Sworn to before me and subscribed in my presence,

May 7, 2007, at Newark, in the District of New Jersey

HONORABLE MADELINE COX ARLEO
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

## ATTACHMENT A

knowingly, wilfully, and with intent to defraud, conspire and agree with others to traffic in and use one or more unauthorized access devices during any one-year period, and by such conduct, obtain things of value aggregating $1,000 or more during that period in a manner affecting interstate commerce, contrary to Title 18, United States Code, Section 1029(a)(2),

in violation of Title 18, United States Code, Section 1029(b)(2).

## ATTACHMENT B

I, Darren McCormack, a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, following an investigation and discussions with other law enforcement officers, am aware of the following facts. All references to an individual's statements are in substance and in part only.

At all times relevant to this Complaint:

1. HSBC USA, Inc. ("HSBC"), Bank of America Corporation ("Bank of America"), Citibank, Discover, Chase, MBNA, First Union, and Fleet (hereinafter "the Victim Card Issuers") issued credit cards in the ordinary course of their business.

2. Company JCC was a wholesale supplier of food, beverages and other merchandise to grocery retailers and food service operators with a place of business in Jersey City, New Jersey. Company JCC sold only to its members, who had to register with Company JCC and show a Company JCC membership card prior to making any purchase.

3. Defendant **RAFAEL MARTE** was the owner of Marte Food Corporation d/b/a Marte Delivery (hereinafter "Marte Delivery"), a corporation organized under the laws of New Jersey. Marte Delivery was a member of Company JCC, and defendant **MARTE** was the only authorized user of Marte Delivery's account at Company JCC.

## OBJECT OF THE CONSPIRACY

4. It was the object of the conspiracy for defendants **AKBAR WRIND**, a/k/a "Subash Chopra", **RAFAEL MARTE**, and other coconspirators working in concert with one another to defraud the Victim Card Issuers by obtaining false identification documents in the names of non-existent persons, by establishing credit lines with the Victim Card Issuers in the names of those non-existent persons, and by fraudulently using those credit lines to obtain cash, merchandise, and other things of value with no intent of paying back the Victim Card Issuers.

## MANNER AND MEANS OF THE CONSPIRACY

5. It was part of the conspiracy that **WRIND** and other coconspirators working with him obtained Social Security Numbers, fraudulent driver's licenses, and other similar personal identifiers for non-existent persons (hereinafter "the False Names").

6. It was a further part of the conspiracy that **WRIND** and other coconspirators leased property in the District of New Jersey and elsewhere using the False Names, including, among other properties, a Union City, New Jersey apartment ("Union City Apartment") and a West New York, New Jersey apartment ("the West New York Apartment") (collectively, "the Drop Addresses").

7. It was a further part of the conspiracy that **WRIND** and other coconspirators used the False Names to establish telephone and other similar utility services at the Drop Addresses.

8. It was a further part of the conspiracy that **WRIND** and other coconspirators obtained credit cards using the False Names ("False Cards") from department stores, such as Macy's and Bloomingdales.

9. It was a further part of the conspiracy that **WRIND** and other coconspirators made purchases at the department stores using the False Cards and then paid the resulting credit card bills sent to the Drop Addresses in order to establish credit histories for the False Names.

10. It was a further part of the conspiracy that **WRIND** and other coconspirators, over the course of months and years, applied for False Cards from the Victim Card Issuers, and made both purchases and payments on the False Cards in order to establish strong credit histories for the False Names and higher credit limits for the False Cards.

11. It was a further part of the conspiracy that, once the scheme had established a sufficiently strong credit history for a False Name, and a sufficiently high credit limit on a False Card, **WRIND, MARTE,** and other coconspirators would "bust out" the False Card, in one of the ways described below.

12. **WRIND, MARTE**, and other coconspirators swiped, and caused others to swipe, False Cards through Company JCC merchant processing terminals with no intention of paying the Victim Card Issuers for the amounts charged.

13. **WRIND** and other coconspirators wrote convenience checks against credit lines linked to the False Cards, with no intention of paying the Victim Card Issuers the amounts written on the checks.

14. **WRIND, MARTE**, and other coconspirators swiped, and caused others to swipe, the False Cards at merchants in exchange for cash payments.

15. **WRIND** and other coconspirators established companies that had no legitimate business purpose ("Shell Companies"), and applied to merchant processing companies on behalf of the Shell Companies in order to obtain point of sale terminals, which **WRIND** and other coconspirators used to swipe, and cause others to swipe, False Cards in exchange for cash payments.

## OVERT ACTS

16. In furtherance of this conspiracy and to effect its unlawful object, the following overt acts were committed in the District of New Jersey and elsewhere:

### The May 13, 2005 Transaction

a. On or about May 13, 2005, at approximately 9:20 a.m., at Company JCC's Jersey City warehouse, a cooperating witness working at the direction of law enforcement ("CW") handed **MARTE** a Bank of America False Card ("the Bank of America Card") and asked **MARTE** to charge $5552.00 to that card.

b. Approximately 10 minutes later, **MARTE** gave CW the Bank of America Card and a credit card receipt indicating that the Bank of America card had been used to process a $5552.00 charge through Company JCC's merchant processing terminal. Company JCC records indicate that the $5552.00 charge on the Bank of America Card was processed through Marte Delivery's membership account, and that the charge was used to pay down a credit line issued by Company JCC to Marte Delivery.

c. In exchange for processing the $5552.00 charge on the Bank of America Card, **MARTE** received 15 percent of the proceeds of the fraudulent charge, or approximately $850.

d. On or about June 1, 2005, at Company JCC's Jersey City location, **MARTE** caused an envelope containing $4,700 in United States currency to be delivered to CW.

### The June 16, 2005 Transaction

e. On or about June 16, 2005, at approximately 4:00 p.m., in the parking lot of Company JCC's Jersey City location, CW again handed **WRIND** the Bank of America Card.

f. On or about June 16, 2005, at approximately 4:00 p.m., **WRIND** entered Company JCC's Jersey City warehouse and swiped, or caused to be swiped, the Bank of America Card, for a total amount of $4942. Company JCC records indicate that the $4942 charge on the Bank of America Card was processed through Marte Delivery's membership account, and that the charge was used to pay down a credit line issued by Company JCC to Marte Delivery.

g. On or about July 11, 2005, in Jersey City, New Jersey, **WRIND** delivered to CW a brown paper bag that contained approximately $4,000 in United States currency. Handwritten on the brown paper bag were the digits "4942" – the amount of the June 16, 2005 charge on the Bank of America Card.

In violation of Title 18, United States Code, Section 1029(b)(2).

5